SAN CARLOS APACHE TRIBE OF ARIZONA, Plaintiff-Appellant,

v.

The STATE OF ARIZONA, a body politic; and the State Land Department of the State of Arizona; and John M. Little, Individually and as Acting Commissioner of the State Land Department of the State of Arizona; and Salt River Valley Water Users' Association, an Arizona Corporation, Defendants-Appellees.

PAYSON COMMUNITY OF YAVAPAI-APACHE INDIANS, Plaintiff-Appellant,

v.

The STATE OF ARIZONA, a body politic; and the State Land Department of the State of Arizona; and John M. Little, Individually and as Acting Commissioner of the State Land Department of the State of Arizona; and Salt River Valley Water Users' Association, an Arizona Corporation, Defendants-Appellees.

SALT RIVER PIMA-MARICOPA INDIAN COMMUNITY, Plaintiff-Appellant,

v.

The STATE OF ARIZONA and John M. Little, Acting Commissioner of the Arizona State Land Department, Defendants-Appellees.

FORT McDOWELL MOHAVE-APACHE INDIAN COMMUNITY, for and on behalf of itself and its members, Plaintiff-Appellant,

v.

SALT RIVER VALLEY WATER USERS' ASSOCIATION; Salt River Project Agricultural Improvement and Power District; City of Phoenix; City of Prescott; City of Jerome; Phelps Dodge Corporation; Phelps Dodge Industries, Inc.; Arizona Water Company; Miller Brothers Farms, Inc.; Camp Verde Water Systems; Cottonwood Water Works, Inc.; Copper Basin Water Co.; V Bar V Cattle Co., Inc.; Harold W. Bullard; and

the State of Arizona, Individually and as representative of a class composed of all others similarly situated, Defendants-Appellees.

Nos. 80–5137, 80–5138, 80–5189 and 80–5219.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 15, 1981.

Decided Feb. 23, 1982.

**1094**

Joe Sparks, E. Dennis Siler, Kevin T. Tehan, Sparks & Siler, P.C., Scottsdale, Ariz., for San Carlos Apache Tribe of Arizona and Payson Community of Yavapai-Apache Indians.

Phillip J. Shea, Marks, Shea & Wilks, Phoenix, Ariz., for Salt River Pima-Maricopa Indian Community.

Lawrence A. Aschenbrenner and Arlinda F. Locklear, Washington, D. C., for Fort McDowell Mohave-Apache Indian Community.

Alvin H. Shrago, Jerry L. Haggard, Evans, Kitchel & Jenckes, Phoenix, Ariz., for Phelps Dodge Corp. and Phelps Dodge Industries.

Russell A. Kolstrud, Asst. Atty. Gen., Phoenix, Ariz., for State of Ariz.

M. Byron Lewis, John B. Weldon, Jr., Jennings, Strouss & Salmon, Frederick J. Martone, James R. Huntwork and Kent A. Blake, Fennemore, Craig, Von Ammon & Udall, Phoenix, Ariz., for Salt River Valley User's Ass'n.

Mark Wilmer, Snell & Wilmer, Bill Stephens, Stephens & Toles and Carol Benyi, Phoenix, Ariz., for City of Phoenix and Prescott, Ariz.

Before MERRILL, CHOY and FERGUSON, Circuit Judges.

CHOY, Circuit Judge:

Several Indian tribes appeal dismissal of petitions brought in federal district court to adjudicate their water rights in several water systems in the State of Arizona. The district court, in a consolidated order, dismissed the suits in favor of a state proceeding relying on *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). We reverse.

Appellants San Carlos Apache Tribe, Payson Community of Yavapai-Apache Indians, Salt River Pima-Maricopa Indian Community and Fort McDowell Mohave-Apache Indian Community (the Tribes) are federally-recognized Indian tribes occupying reservations located in the State of Arizona. The region is semi-desert with alluvial soils suitable for agriculture, but a low rainfall makes irrigation necessary. The only surface water available is provided by the Salt and Verde Rivers which are fed by a 13,000-square-mile watershed.

Appellees include the State. of Arizona, various state officials, and the Salt River Valley Water Users' Association.

I. *Historical Overview*

A. *Prior Appropriation*

Most western states apply the doctrine of prior appropriation in establishing rights to the use of water. Under this doctrine, one acquires a right to water by diverting it from its natural source and applying it to some beneficial use. Continued beneficial use of the water is required in order to maintain the right. In periods of shortage, priority among confirmed rights is determined according to the date of initial diversion.[1] This doctrine, which is based on use, unavoidably brings the interest of state claimants into conflict with Indian tribes who claim water rights under the *Winters* doctrine, which is based on need.

2. *Winters or Reservation Doctrine*

Indian water rights are created outside the system of state law and exist independently of that system. *Indian Water*

---

1. *See Colorado River Water Conservation District v. United States*, 424 U.S. 800, 805, 96 S.Ct. 1236, 1240, 47 L.Ed.2d 2483 (1976).

*Rights: A State Perspective After Akin*, 57 Neb.L.Rev. 295 (1978). In *Winters v. United States*, 207 U.S. 564, 28 S.Ct. 207, 52 L.Ed. 340 (1908), the Supreme Court described the nature of Indian water rights. The Court held that each time the federal government sets aside land from the public domain for a federal purpose it implies a reservation of water resources to meet the needs of that land. An implied reservation of water for an Indian reservation will be found where it is necessary to fulfill the purposes of the reservation. They are reserved in trust to the federal government with a priority date as of the time the reservation was established. The United States thus holds legal title. *Arizona v. California*, 373 U.S. 546, 600, 83 S.Ct. 1468, 1498, 10 L.Ed.2d 542 (1963). Unlike the rights accruing to non-Indians based on beneficial use and non-use, Indian water rights are reserved for present and future needs of the reservations. Federally reserved water rights affect 17 states. The precise extent and nature of most reserved rights have yet to be determined.[2]

The *Winters* doctrine is the source of major problems for dry, western states. As water is reserved for tribes for current and future needs, the quantity required is unspecified. Without jurisdiction over the tribal lands or a description of the scope of the reserved right, states are unable to develop comprehensive water allocation plans with certainty.

In 1952, Congress passed the McCarran Amendment, 66 Stat. 560, 43 U.S.C. § 666, consenting to state court jurisdiction over the United States when litigation involves comprehensive adjudication of water rights. The amendment provides that "consent is hereby given to join the United States as a defendant in any suit (1) for the adjudication of rights to use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit." Previously, the United States could not be joined in water rights adjudication because of sovereign immunity. The McCarran Amendment waives the sovereign immunity in general water rights adjudications. The purpose of the McCarran Amendment was to eliminate the uncertainty engendered by the inability to compel adjudication of federal water rights. The amendment grants state courts the power to adjudicate federal water rights.

### 4. Akin Decision

In *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (Akin),[3] the Supreme Court interpreted the McCarran Amendment. The question in *Akin* concerned the effect of the McCarran Amendment upon the jurisdiction of the

---

**2.** In *Arizona v. California*, 373 U.S. 546, 600, 83 S.Ct. 1468, 1498, 10 L.Ed.2d 542 (1963), the Supreme Court reaffirmed the *Winters* reservation doctrine and further affirmed the special master's conclusion as to the quantity of water intended to be reserved. The finding in that case was that the reserved water was intended to satisfy the future as well as the present needs of the Indian reservation and enough water was reserved to irrigate all the practicably irrigable acreage on the reservations.

In *United States v. New Mexico*, 438 U.S. 696, 98 S.Ct. 3012, 57 L.Ed.2d 1052 (1978), in determining the extent of an implied reservation of water for a national forest, the Supreme Court held:

Where water is necessary to fulfill the very purposes for which a federal reservation was created, it is reasonable to conclude, even in

the face of Congress' express deference to state water law in other areas, that the United States intended to reserve the necessary water. Where water is only valuable for a secondary use of the reservation, however, there arises the contrary inference that Congress intended, consistent with its other views, that the United States would acquire water in the same manner as any other public or private appropriator.

438 U.S. at 702, 98 S.Ct. at 3015. The Ninth Circuit applied the *New Mexico* test to determine Indian reserved water rights in *Colville Confederated Tribes v. Walton*, 647 F.2d 42 (9 Cir. 1981).

**3.** This decision was an appeal from *United States v. Akin*, 504 F.2d 115 (10th Cir. 1974).

federal district courts under 28 U.S.C. § 1345 over suits for determination of water rights brought by the United States as trustee for certain Indian tribes and as owner of various non-Indian Government claims. In *Akin* the Government brought suit in the United States District Court for the District of Colorado, invoking the court's jurisdiction under 28 U.S.C. § 1345. 28 U.S.C. § 1345 provides:

> Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

In the suit, the Government asserted reserved rights on its own behalf and on behalf of certain Indian tribes, as well as rights based on state law.

Shortly after the federal suit was commenced, one of the defendants in that suit filed an application in the state court for Division 7[4] seeking an order directing service of process on the United States in order to make it a party to proceedings in Division 7 for the purpose of adjudicating all of the Government's claims, both state and federal. On January 3, 1973, the United States was served pursuant to authority of the McCarran Amendment. Several defendants and intervenors in the federal proceeding then filed a motion in the district court to dismiss on the ground that under the amendment, the district court was without jurisdiction to determine federal water rights. Without deciding the jurisdictional question, the district court, on June 21, 1973, granted the motion stating that the doctrine of abstention required deference to the proceedings in Division 7. On appeal, the Court of Appeals for the Tenth Circuit reversed, *United States v. Akin*, 504 F.2d 115 (1974), holding that the suit of the United States was within district court jurisdiction under 28 U.S.C. § 1345, and that abstention was inappropriate.

4. Under Colorado law, the state is divided into Water Divisions with adjudication of water

Certiorari was granted and in *Colorado River Water Conservation District v. United States*, the Supreme Court held that although the district court had jurisdiction over the action and abstention was improper, the dismissal was nevertheless proper under the doctrine of "wise judicial administration."

The Court first held that in view of the McCarran Amendment's language and legislative history and controlling principles of statutory construction, the amendment in no way diminished the jurisdiction of district courts under § 1345 to hear federal water rights suits. The Court found that the effect of the amendment was to give consent to jurisdiction in the state courts concurrent with jurisdiction in the federal courts over controversies involving federal rights to the use of water. 424 U.S. at 808–809, 96 S.Ct. at 1241–1242.

The Court also concluded specifically that the state court had jurisdiction over Indian water rights under the McCarran Amendment. *Id.* at 809, 96 S.Ct. at 1242. This finding was based both on the amendment's language and its underlying policy of avoiding piecemeal adjudication of water rights in a river system. The Court went on to hold that the district court dismissal could not be supported under the doctrine of abstention in any of its forms.

The Court held finally that the dismissal was proper due to considerations of "wise judicial administration" in a situation involving concurrent state-federal jurisdiction.

II. *Issues on Appeal*

1. Does the federal Enabling Act authorizing Arizona's admission to the Union, and the state's disclaimer clause in its constitution prohibit Arizona from exercising jurisdiction over Indian tribes?

2. Even if the Arizona courts had jurisdiction, did the district court improperly apply the doctrine of "wise judicial administration" in dismissing the case?

claims within each Division occurring on a continuous basis.

III. *Disclaimer Issue*

Arizona was admitted to the Union on condition that it disclaim right and title to and jurisdiction over Indian lands. The Arizona Enabling Act (36 Stat. 569) provides in relevant part:

> Second. That the people inhabiting said proposed State do agree and declare that they forever disclaim all right and title to the unappropriated and ungranted public lands lying within the boundaries thereof and to all lands lying within said boundaries owned or held by any Indian or Indian tribes, the right or title to which shall have been acquired through or from the United States or any prior sovereignty, and that until the title of such Indian or Indian tribes shall have been extinguished the same shall ·be and remain subject to the disposition and under the absolute jurisdiction and control of the Congress of the United States.

The Arizona constitution disclaims jurisdiction over Indian lands providing:

### FOURTH. PUBLIC LANDS; INDIAN LANDS.

> Fourth. The people inhabiting this State do agree and declare that they forever disclaim all right and title to the unappropriated and ungranted public lands lying within the boundaries thereof and to all lands lying within said boundaries owned or held by any Indian or Indian tribes, the right or title to which shall have been acquired through or from the United States or any prior sovereignty, and that, until the title of such Indian or Indian tribes shall have been extinguished, the same shall be, and remain, subject to the disposition and under the absolute jurisdiction and control of the Congress of the United States.

Arizona Constitution, article 20, paragraph 4.

The Tribes contend that the disclaimer provisions bar jurisdiction over the Indians

and were not repealed by the McCarran Act.[5] The district court rejected this contention citing *Jicarilla Apache Tribe v. United States*, 601 F.2d 1116 (10th Cir.), cert. denied, 444 U.S. 995, 100 S.Ct. 530, 62 L.Ed.2d 426 (1979). We disagree.

The Arizona Enabling Act and constitutional disclaimer provisions are essentially identical to the Montana Enabling Act and constitutional disclaimer provisions. In reaching the conclusion that Arizona has disclaimed jurisdiction over the Indian lands we adopt in full the reasoning and analysis found in *Northern Cheyenne Tribe v. Adsit*, 668 F.2d 1080, 1090 (9th Cir. 1982).

As in the *Northern Cheyenne* case, we find it necessary to remand for a determination of whether Arizona has obtained jurisdiction over the Indians pursuant to Public Law 280.

IV. *Application of the Doctrine of "Wise Judicial Administration"*

Without much discussion, and purporting to follow the Supreme Court's *Akin* decision, the district court dismissed the federal action "in light of considerations of federal judicial restraint in State matters and judicial administration, further giving regard to the conservation of judicial resources and the comprehensive disposition of litigation." 487 F.Supp. at 784.

The Supreme Court in *Akin* held that the state and federal courts had concurrent jurisdiction over controversies involving federal rights to the use of water and that the district court's dismissal of the federal action was improper under the doctrine of abstention. The Court, nevertheless, held the dismissal proper under the doctrine of "wise judicial administration."

The Court stated that the circumstances permitting a dismissal for reasons of wise judicial administration "are considerably more limited than the circumstances appropriate for abstention," 424 U.S. at 818, 96

---

**5.** The disclaimer was not an issue in the *Akin* case as Colorado did not disclaim jurisdiction over Indian lands.

S.Ct. at 1246, and the Court referred to the necessary circumstances as "exceptional." The factors that the Supreme Court stated could be considered include which court first assumed jurisdiction over the property, the inconvenience of the federal forum, the avoidance of piecemeal litigation and the order in which jurisdiction was obtained by the concurrent forum. The Court stated:

No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required. Only the clearest of justifications will warrant dismissal.

The Court found the dismissal to be proper, considering such factors as (1) the state's established single continuous proceeding for water rights adjudication which antedated the district court suit, (2) the apparent absence of any proceedings in the district court, other than the filing of the complaint, prior to the motion to dismiss, (3) the extensive involvement of state water rights occasioned by this suit naming 1,000 defendants, (4) the 300-mile distance between the district court in Denver and the court in Division 7, and (5) the existing participation by the Government in Divisions 4, 5, and 6 proceedings.

The Court in *Akin* refers to "wise judicial administration" as being proper only under "exceptional" circumstances. The Court specifically did not decide whether dismissal would be warranted if more extensive proceedings had occurred in the district court prior to dismissal, if the involvement of state water rights were less extensive or if the state proceeding were in some respect inadequate to resolve the federal claims. 424 U.S. at 820, 96 S.Ct. at 1248. The Court also specifically left open the question of the application of the "wise judicial administration" doctrine to a water rights suit brought by a private party such as an Indian tribe rather than the United States. 424 U.S. at 801 n.26, 96 S.Ct. at 1248.

Our holding on the disclaimer issue makes it unnecessary for us to decide at this time whether dismissal under the doctrine of "wise judicial administration" would have been proper if Arizona had not disclaimed jurisdiction over the Indians. We note that the district judge did not make findings on this issue and the record indicates significant differences between these cases and the *Akin* case.

V. *Other Issues*

The Tribes raise several other issues, including the adjudication of ground-water claims, service of process, damage action, and the sovereign immunity of the United States in the *Navajo Nation* case. Due to our holding on the disclaimer issue we find it unnecessary to reach any other issues.

VI. *Conclusion*

We find the district court's conclusion that the disclaimer provisions in the Arizona Enabling Act and constitution do not preclude state jurisdiction over the Indians to be incorrect. On remand the district court must determine if Arizona has properly asserted jurisdiction pursuant to Public Law 280.

REVERSED and REMANDED.

MERRILL, Circuit Judge, dissenting:

For the reasons set forth in my dissent in *Northern Cheyenne Tribe v. Adsit*, 668 F.2d at 1090, I dissent from the Court's holding that the disclaimer clauses in the Arizona Statehood Act and the State Constitution deprive the state courts of jurisdiction to establish and adjudicate the reserved water rights of the United States held by it in trust for the Indian tribes.

Further I dissent from the Court's holding that wise judicial administration, as that term is used in *Akin*, does not call for dismissal of the federal suits. Here no suit seeks general adjudication of a stream system. In the suits brought by San Carlos Apache Tribe, Payson Community of Yavapai-Apache Indians and Fort McDowell Mohave-Apache Indian Community, the prayers are for adjudication only of the reserved rights of the plaintiff Tribes. The Salt River Pima-Maricopa Indian Community

suit prays only to enjoin state court action and seeks no adjudication at all. Thus, at best, the suits constitute piecemeal adjudication of the streams. While the rights held for Indians would be established, the rights of the other water users on the streams would not.

In these circumstances, principles of wise judicial administration clearly counsel against federal adjudication of the Tribes' claims. The *Akin* Court regarded the McCarran Amendment itself as the most important factor favoring state proceedings over federal. It stated:

The clear federal policy evinced by that legislation is the avoidance of piecemeal adjudication of water rights in a river system.... [T]he concern ... with avoiding the generation of additional litigation through permitting inconsistent dispositions of property ... is heightened with respect to water rights, the relationships among which are highly interdependent. Indeed, we have recognized that actions seeking the allocation of water essentially involve the disposition of property and are best conducted in unified proceedings.... The consent to jurisdiction given by the McCarran Amendment bespeaks a policy that recognizes the availability of comprehensive state systems for adjudication of water rights as the means for achieving these goals.

424 U.S. at 819, 96 S.Ct. at 1247. The Court also quoted from the legislative history of the McCarran Amendment to this effect:

In the administration of and the adjudication of water rights under State laws the State courts are vested with the jurisdiction necessary for the proper and efficient disposition thereof, and by reason of the interlocking of adjudicated rights on any stream system, any order or action affecting one right affects all such rights. Accordingly all water users on a stream, in practically every case, are interested and necessary parties to any court proceedings. It is apparent that if any water user claiming to hold such right by reason of the ownership thereof by the United States or any of its departments

is permitted to claim immunity from suit in, or orders of, a State court, such claims could materially interfere with the lawful and equitable use of water for beneficial use by the other water users who are amenable to and bound by the decrees and orders of the State courts.

*Id.* at 810, 96 S.Ct. at 1242, quoting S.Rep.No. 755, 82d Cong., 1st Sess., 4–5 (1951).

In fact, however, the suits now before us would not even constitute piecemeal adjudication; rather, they would result in no effective adjudication at all. Since the suits do not seek general adjudication of the stream systems involved, the McCarran Amendment does not provide the consent of the United States to be sued. *Dugan v. Rank*, 372 U.S. 609, 617–19, 83 S.Ct. 999, 1004–05, 10 L.Ed.2d 15 (1963). Yet, on every stream system involved in these suits, the United States claims reserved rights. Similarly, on some of the stream systems, the rights of other Indian tribes are involved. They too are immune from suit. *California v. Quechan Tribe of Indians,* 595 F.2d 1153, 1155 (9th Cir. 1979). As a result, an adjudication of the rights of the plaintiff Tribes would accomplish nothing since it could have no binding effect on the absent claimants.

In my judgment wise judicial administration would not tolerate the confusion which these suits would create and the havoc they can be expected to play with the state's statutory efforts to deal with its problems of water scarcity—problems faced not just by Indians, but by every resident of the state; problems of such awesome dimensions that the state's efforts to solve them should have federal respect and encouragement.

For these reasons I would hold that wise judicial administration as a matter of law demands the dismissal of these suits and would affirm the district court.