**CONFEDERATED SALISH AND KOOTENAI TRIBES OF the FLATHEAD RESERVATION, MONTANA, Plaintiff,**

v.

**FLATHEAD IRRIGATION AND POWER PROJECT; August C. Mueller, Acting Project Engineer, Flathead Irrigation and Power Project; and United States of America, Defendants,**

and

**Joint Board of Control of the Flathead, Mission and Jocko Valley Irrigation Districts, Intervening Defendant.**

**No. CV 85–150–M.**

United States District Court, D. Montana, Missoula Division.

Aug. 20, 1985.

Stanley T. Kaleczyc, R. Stephen Browning, and J. Daniel Hoven, Browning & Kaleczyc, P.C., F. Woodside Wright, Helena, Mont., for defendants.

Mike Greely, Atty. Gen., Clay R. Smith, Asst. Atty. Gen., Helena, Mont., Deirdre Boggs, Hamilton, Mont., for Intervenor Joint Board of Control.

James H. Goetz, and Brigitte M. Anderson, Goetz, Madden & Dunn, P.C., Bozeman, Mont., Daniel F. Decker, John B. Carter, and Patrick L. Smith, Confederated Salish & Kootenai Tribes, for Intervnor State of Mont.

Robert Brooks, Asst. U.S. Atty., Vernon Peterson, Regional Sol., Portland, Or., and Ann Crichton, U.S. Dept. of Interior, Washington, D.C., for plaintiff.

**1.** 12 Stat. 975.

## MEMORANDUM OPINION AND ORDER

LOVELL, District Judge.

This is an action for injunctive relief by Plaintiff, (hereinafter also "Tribes"), to enjoin Defendants (hereinafter also the "Project") from endangering the Tribes' fishing and appurtenant water rights allegedly guaranteed by the Hell Gate treaty of July 16, 1855.[1]

The parties are: Plaintiff, the Confederated Salish and Kootenai Tribes of the Flathead Reservation, a duly recognized governing body organized pursuant to the Indian Reorganization Act of 1934, 25 U.S.C. § 476 *et seq.;* Defendant Flathead Irrigation and Power Project, an Indian irrigation project operated by the Bureau of Indian Affairs, United States Department of Interior; Defendant August C. Mueller, Acting Project Engineer for the Flathead Irrigation and Power Project; Defendant United States of America; and Intervening Defendant The Joint Board of Control for the Flathead, Mission and Jocko Valley Irrigation Districts (hereinafter also "JBC"), which represents approximately 2,600 farmer-irrigators, both Indian and non-Indian, who receive water from the Project. The State of Montana also seeks to be made a party-defendant herein; that motion will be addressed later in the opinion.

This opinion is written because of the vigorous denial of this Court's jurisdiction, initially by the United States and the JBC, and later by the State of Montana.

### FACTUAL AND PROCEDURAL BACKGROUND

The Flathead Reservation was established by the Treaty of Hell Gate, signed on July 16, 1855, and approved by Congress in 1859. By the terms of the Treaty, the Tribes relinquished all right, title and interest in and to what is now most of Montana. The Treaty reserved approximately 1.2 million acres of land for "the exclusive use and benefit of said Confederated Tribes as an Indian reservation." [2] It also secured to

**2.** Article II, Hell Gate Treaty, 12 Stat. 975

the Tribes the exclusive right of taking fish in all streams running through or bordering the Reservation. By the Flathead Act of 1904,[3] Congress provided for allotments of reservation land to individual Indians on the Flathead Reservation, and for opening the surplus, unallocated lands to non-Indians. The Reservation was formally opened for non-Indian settlement by Presidential Proclamation on May 22, 1909.[4]

The Project was created by the Act of April 23, 1904,[5] as amended by the Act of May 29, 1908.[6] It is administered by the Bureau of Indian Affairs, United States Department of the Interior, and currently supplies water to irrigate some 127,079 acres of land, approximately 16,085 of which are held in trust by the United States for the Tribes and their members. The remaining acreage is held in fee, by both Indians and non-Indians. The Project maintains approximately 1,165 miles of canals and fourteen reservoirs for irrigation, accounting for 55 to 65 per cent of all surface waters occurring within the Reservation.

As a result of diminished precipitation and snowpack levels in 1985, combined with above-average summer temperatures, the Flathead Reservation has experienced unusually dry conditions, threatening to result in a severe drought before the close of the 1985 irrigation season. This action was commenced to prevent the dewatering, for irrigation, of streams and reservoirs which serve as natural habitat for tribal fisheries, consisting largely of native and wild naturally reproducing trout, as well as other species. The Tribes allege violation by the Project of treaty fishing rights and reserved water rights appurtenant thereto as well as breach of fiduciary duty and abuse of discretion in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2) (1977). They further allege that immediate injunctive relief is necessary to prevent irreparable injury to the fisheries.

On August 1, 1985, Plaintiffs moved for a temporary restraining order which the Court heard in open court. Although it considered Plaintiff's motion an ex parte request, as provided by Rule 65(b) Fed.R. Civ.P., the Court made certain that other interested parties were requested to appear and be fully heard on the matter. During the hearing, the United States was joined as a party, and the court entertained a motion to intervene by the JBC, pursuant to Rule 24(a)(2) Fed.R.Civ.P. The JBC appeared on behalf of the 2,600 irrigators within the regulatory area of the Project who stand to incur substantial hardship were the Project enjoined from delivering water for irrigation. JBC adequately demonstrated that the interests of the irrigators would be significantly impaired by curtailing irrigation flows; since such interests were not represented by existing parties to the litigation, the Court ruled that intervention would be granted upon JBC's filing of an answer, and JBC was allowed to present its arguments in opposition to the restraining order.

The evidence submitted to the Court during the hearing demonstrated the immediacy of the water crisis facing the Flathead Reservation. The exclusive fishing rights guaranteed to the Tribes were not the subject of opposition; rather, the dispute concerned the implied reservation of water to support a core population of fish on the Reservation. Additionally, the United States and JBC contested the Court's jurisdiction to consider the matter at all. After a showing by the Tribes of a possibility of irreparable injury to tribal fisheries, and a likelihood of successfully proving that a right to a minimum quantity of water for preservation of the fisheries was impliedly reserved by the Treaty of Hell Gate, the Court entered an order temporarily restraining the Project from allowing diversions in excess of sufficient waters to maintain and preserve the native and wild trout fishery within the Reservation.[7] A hearing

---

**3.** 33 Stat. 302

**4.** 36 Stat. 2494

**5.** 33 Stat. 302

**6.** 35 Stat. 444

**7.** Plaintiff requested the Court to determine specific numerical stream flow and reservoir levels, which the Court emphatically declined to do. The text of the temporary restraining order is reprinted as an appendix to this opinion.

for preliminary injunction was set for August 9, 1985, and was subsequently continued to August 12, 1985.

On August 12, 1985, the Court convened to hear the Tribes' motion for preliminary injunction. At the commencement of the hearing, the State of Montana appeared for the first time and moved to intervene as a party-defendant in the action pursuant to Rule 24(a)(2), Fed.R.Civ.P. The state claims to have a unique interest in the subject matter of the action arising out of its comprehensive water rights adjudication plan, and has predicated its motion for intervention on the inadequate representation of its interest by existing parties. The motion was resisted by the Tribes but unopposed by all other parties. It was at this stage of the proceedings that the Tribes submitted to the Court a stipulation, being a written agreement between the Tribes and the Project, and signed by the United States, by the terms of which all differences between the original parties hereto are resolved and settled, to be effective from the date thereof until October 31, 1985. Thereafter the United States suggested to the Court that the matter had become moot, to which the Tribes agreed and suggested dismissal of the case without prejudice. The terms of the dismissal ultimately received the consent of both the JBC and the State of Montana.

## JURISDICTION

■ Jurisdiction lies with this Court pursuant to 28 U.S.C. § 1362 (1966).[8] The Tribes commenced this action alleging breach of treaty-guaranteed fishing rights which the United States has a duty to protect. As a general rule, federal courts have jurisdiction to hear and decide claims by an Indian tribe against the United States arising under federal law. *Gila River Indian Community v. Henningson, Durham and Richardson*, 626 F.2d 708, 711 (9th Cir.1980). The Supreme Court has construed the McCarran Amendment, 43 U.S.C. § 666 (1952), as providing an exception to federal jurisdiction where Indian

water rights are at issue. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), reh. den., 426 U.S. 912, 96 S.Ct. 2239, 48 L.Ed.2d 839; *Arizona v. San Carlos Apache Tribe*, 463 U.S. 545, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983). The *Colorado River* and *San Carlos* cases dictate deferral of water rights adjudication to state courts in the interests of wise judicial administration. It is clear, however, that the Supreme Court's statement that state courts have jurisdiction over Indian water rights "does not imply that state courts have *exclusive* jurisdiction over such rights." *United States v. Adair*, 723 F.2d 1394 (9th Cir.1983) [emphasis in original].

The State of Montana's intervention is in essence exclusively for the purpose of asserting the lack of this Court's jurisdiction over the matter. The State, joined by JBC, contends that the Tribes' claims are barred by *res judicata* and collateral estoppel as a result of the *San Carlos* decision and the subsequent Ninth Circuit remand order in *Northern Cheyenne Tribe v. Adsit*, 721 F.2d 1187 (9th Cir.1983). It is JBC's and the State's position that any decision by this Court limiting the diversion of water for irrigation would be an adjudication of water rights, including the existence, relative priority, and quantity of Tribal instream flow rights.

*Res judicata* is raised as a defense by the State and by the JBC on the grounds that the Tribes were a party to the *Adsit* litigation and are estopped from raising the identical claim of reserved rights addressed in *Adsit*. In 1979, the United States filed seven actions in the Montana federal district courts, seeking a federal forum to generally adjudicate water rights in drainages involving federally reserved water rights. One such action was *United States v. Abell*, 484 F.Supp. 31 (Mont.1979), brought on behalf of the Confederated Salish and Kootenai Tribes to obtain adjudication of water rights within the Flathead

---

**8.** 28 U.S.C. § 1362 provides as follows: "The district courts shall have original jurisdiction of all civil actions, brought by any Indian Tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States."

River Basin. Although the Tribes did not participate in *Abell* at the district court level, they intervened in the subsequent Ninth Circuit appeal. Under the authority of the *Colorado River* case, Judges Hatfield and Battin of the District of Montana had consolidated *Abell* and the six other pending actions and dismissed all seven suits in deference to the State of Montana's water adjudication proceedings. On appeal, the Ninth Circuit reversed and remanded for further proceedings. *Northern Cheyenne Tribe v. Adsit,* 668 F.2d 1080 (9th Cir.1982). The United States Supreme Court granted Montana's petition for certiorari and consolidated the case with *San Carlos Apache Tribe v. Arizona,* 668 F.2d 1093 (9th Cir.1982). The Supreme Court reversed the Ninth Circuit, concluding that the District Courts correctly dismissed in deference to the state proceedings. *Arizona v. San Carlos Apache Tribe, Supra,* 463 U.S. at 570, 103 S.Ct. at 3215. On remand, the Ninth Circuit entered a stay of the federal actions until the conclusion of state proceedings, and declined to rule on questions of state jurisdiction or adequacy of state proceedings. *Northern Cheyenne Tribe v. Adsit,* 721 F.2d at 1188–1189.

The State of Montana and the JBC claim that jurisdiction of this Court is barred by *Adsit* and considerations of wise judicial administration spelled out in *San Carlos.* They allege that any decision by this Court would necessarily require a determination of the issues presented in *Abell* and deferred to state court.

The Tribes respond to these arguments by countering that the Montana Supreme Court has not ruled on the adequacy of the state system to adjudicate federally reserved water rights, although the question is pending. *State of Montana v. Water Court of the State of Montana,* — Mont. —, 691 P.2d 833 (1984). The Tribes further allege that the Montana water court system is presently in disarray, due to a pending action between the Montana Department of Fish, Wildlife and Parks and the State Water Court, involving instream flow rights. Moreover the Tribes assert that even if Montana has proper adjudicatory jurisdiction, there is no adequate state forum for purposes of the emergency relief sought herein.

ISSUES OF LAW

The gravamen of this controversy is twofold: first, whether the *Winters* doctrine extends to implication of a water right sufficient for preservation of native and naturally reproducing fish; and second, if the Tribes do have a reserved water right for fishery preservation, whether such right is entitled to priority over the rights of both Indian and non-Indian water users.

The doctrine of reserved water rights has been a part of federal law since the 1908 case of *Winters v. United States,* 207 U.S. 564, 28 S.Ct. 207, 52 L.Ed. 340 (1908). Recently, the Supreme Court expressed its most succinct and lucid statement of the governing principles of reserved water rights:

> This Court has long held that when the federal government withdraws its land from the public domain and reserves it for a federal purpose, the Government, by implication, reserves appurtenant water then unappropriated to the extent needed to accomplish the purpose of the reservation. In so doing the United States acquires a reserved right in unappropriated water which vests on the date of the reservation and is superior to the rights of future appropriators. Reservation of water rights is empowered by the Commerce Clause, Art. I., § 8, which permits federal regulation of navigable streams, and the Property Clause, Art. IV., § 3, which permits federal regulation of federal lands. The doctrine applies to Indian reservations and other federal enclaves, encompassing water rights in navigable and nonnavigable streams.
>
> \*   \*   \*   \*   \*   \*
>
> In determining whether there is a federally reserved water right implicit in a federal reservation of public land the issue is whether the government intended to reserve unappropriated and thus available water. Intent is inferred if the previously unappropriated waters are neces-

sary to accomplish the purpose for which the reservation was created.

*Cappaert v. United States*, 426 U.S. 128, 138, 96 S.Ct. 2062, 2069, 48 L.Ed.2d 523, 534, (1976). *See also, United States v. New Mexico*, 438 U.S. 696, 98 S.Ct. 3012, 57 L.Ed.2d 1052 (1978).

*Cappaert* has special significance to this action, insofar as the Supreme Court allowed the United States to protect water from diversion for preservation of a peculiar race of desert fish, the survival of which was found to be a purpose for which the reservation, a National Park, was created.

The Ninth Circuit Court of Appeals has applied the *Cappaert* guidelines in the context of Indian water rights. *United States v. Adair, supra.*, 723 F.2d 1394. Indeed, *Adair* is educational for the resolution of issues presented by the Tribes in this matter. The Ninth Circuit recognized that the right to water for hunting and fishing purposes is a right to prevent other appropriators from depleting the streams' waters below a protected level in any area where the non-consumptive right applies. *Adair, supra.*, 723 F.2d at 1411. The court found that the rulings of *Cappaert* and *New Mexico, supra.*, do not require the identification of a single purpose which the parties to the treaty intended the reservation to serve and further that both agrarian objectives and hunting and fishing qualified as primary purposes of the Klamath Treaty. A similar conclusion was reached in *Colville Confederated Tribes v. Walton*, 647 F.2d 42 (9th Cir.1981) [*Walton II.*], in which the court found preservation of the tribe's access to fishing grounds one purpose for the creation of the Colville Reservation.[9]

■■■ In view of the stipulation between the original parties, it is not necessary now for the Court to determine the extent of its jurisdiction to ultimately resolve this matter. The Court will not attempt to qualify or quantify the full extent of the Tribes' relative water rights. At this time it is the holding of the Court only that given the existence of a federal issue of reserved water rights, together with the exigency of the circumstances, jurisdiction was properly invoked on an emergency basis, and that the temporary restraining order was properly issued to protect the tribal fisheries from irreparable injury. *Kittitas Reclamation District v. Sunnyside Valley Irrigation District*, 763 F.2d 1032 (9th Cir. 1985); *Colville Confederated Tribes v. Walton*, 752 F.2d 397 (9th Cir.1985). The Court further holds that under *San Carlos*, the proper forum for general adjudication of water rights on the Flathead Indian Reservation lies in the state courts of Montana.

The Court recognizes and appreciates the excellent briefing and presentation of the issues in the case by counsel for all parties, on short notice, and under emergency conditions.

IT IS HEREBY ORDERED:

1. Plaintiffs' motion for preliminary injunction is DENIED.

2. The motion of the State of Montana to intervene as a party-defendant pursuant to Rule 24(a)(2), Fed.R.Civ.P., is GRANTED.

3. Plaintiff's Complaint is DISMISSED in its entirety as to all parties, without prejudice to the Plaintiff to refile, for the reason that the subject matter of the action has become moot due to the stipulation between the original parties, and agreement to the terms of dismissal by all other parties to the action. The terms of the stipulation are not incorporated into this order, nor will the Court retain continuing jurisdiction to enforce any of the provisions of the stipulation.

### APPENDIX

### TEMPORARY RESTRAINING ORDER

"Motions for temporary restraining order and preliminary injunction have been made by the Plaintiff, Confederated Salish

---

9. The Tribes, supported by language in *Adair*, 723 F.2d at 1414, also claim that their reserved rights to water on the Flathead Reservation are aboriginal, with a priority date of time immemorial. This assertion is sharply contested by the JBC, which claims that the Tribes' water rights have a priority date of July 16, 1855, the date of the treaty.

and Kootenai Tribes of the Flathead Reservation, Montana, pursuant to Rule 65 F.R. Civ.P. This Court has considered those motions together with the affidavits filed in support thereof and has considered the complaint and brief. From the affidavits it clearly appears that specific facts demonstrate that immediate and irreparable injury is being suffered by the Applicant, and that such injury will possibly continue to result to the Applicant before the Defendants, Flathead Irrigation and Power Project and its acting Project Engineer, can be heard in opposition and that therefore a temporary restraining order is immediately necessary and that an expedited hearing on the motion for preliminary injunction must be set.

"The injury which is being suffered by the Applicant results from the severe drought conditions that are being experienced in Western Montana. Streams and reservoirs of the Flathead Indian Reservation are rapidly becoming dewatered. As a consequence, there is an immediate injurious effect on the wild, naturally reproducing fish in these streams and reservoirs and to the interests of the Plaintiffs in such fish as allegedly protected by the Plaintiffs' Treaty with the United States of July 16, 1855. In addition, there is a strong potential for significant mortality to occur to the wild trout populations on the Flathead Reservation if conditions do not improve. Due to the manner in which the Flathead Irrigation and Power Project is being administered, its reservoirs will possibly become exhausted during the present irrigation season with significant adverse impact on the ability of these reservoirs to provide a fishery. The Court concludes that Applicant has adequately demonstrated probable success on the merits as to its treaty rights.

"This order is of limited duration and scope. The Court does not purport to adjudicate the specific water rights of any of the interested parties, nor does it intend to assert itself in the water rights adjudication process being conducted by the State of Montana. The Court specifically abstains from doing so.

"THEREFORE IT IS ORDERED that the Defendants Flathead Irrigation and Power Project and its acting Project Engineer, August Mueller, and all their agents and all those acting in concert with them, be, and hereby are, temporarily restrained from diverting waters from any of the streams or reservoirs on the Flathead Reservation, Montana, listed below, unless they shall first ensure that there are sufficient waters left in said streams and reservoirs to maintain and preserve the native and wild trout fishery therein.

"The streams and reservoirs included herein are:

"Jocko River; Mission Creek; Post Creek; Little Bitteroot River; Upper Crow Creek; Lower Crow Creek; Mission Reservoir; Upper Jocko Reservoir; Lower Jocko Reservoir; Crow Reservoir;

"IT IS FURTHER ORDERED that the application for a preliminary injunction prayed for in the complaint be and the same is hereby set for hearing before the undersigned in Helena, Montana, at the Federal Courthouse, on the 9th day of August, 1985 at 9:00 o'clock a.m.; and that a copy of this Order be served immediately with the summons and complaint upon each of the Defendants and due return made according to law.

"This Court has considered the security provisions of Rule 65(c) F.R.Civ.P., and upon due consideration and it appearing that bond is unnecessary Orders that no security be required as a condition to the temporary restraining order. This temporary restraining order is issued this 1st day of August at 4:30 o'clock p.m. and shall be filed forthwith in the Clerk's Office and entered of record.