JOINT BOARD OF CONTROL OF the FLATHEAD, MISSION AND JOCKO IRRIGATION DISTRICTS, Plaintiff/Appellant,

v.

UNITED STATES of America; United States Department of the Interior; the Honorable Donald Hodel, Secretary of the Interior; the Bureau of Indian Affairs, an Agency within the Department of Interior; Stanley Speaks, Director, Portland Area Office, Bureau of Indian Affairs; and the Flathead Irrigation and Power Project, an Agency within the Bureau of Indian Affairs; Wyman Babby, Superintendent of the Flathead Agency; Defendants/Appellees,

and

The Confederated Salish and Kootenai Tribes of the Flathead Reservation, Intervenor–Defendant/Appellee.

No. 87–4106.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 6, 1988.

Decided Nov. 29, 1988.

Stanley T. Kaleczyc, Helena, Mont., for plaintiff/appellant.

Maria U. Iizuka, U.S. Dept. of Justice, Washington, D.C., for defendants/appellees, and Patrick L. Smith, Pablo, Mont., for defendant-intervenor/appellee.

Before SCHROEDER, ALARCON and NORRIS, Circuit Judges.

ALARCON, Circuit Judge:

Plaintiff/Appellant the Joint Board of Control of the Flathead, Mission and Jocko Irrigation Districts ("Joint Board") filed an action in the district court for injunctive relief from operating procedures adopted by the Bureau of Indian Affairs ("BIA"), an agency within the Department of the Interior, to regulate instream flow and reservoir pool levels on the waters administered by the Flathead Irrigation and Power Project ("FIPP"), an agency within the BIA. Intervenor–Defendant/Appellee the Confederated Salish and Kootenai Tribes of the Flathead Reservation ("Tribes") intervened claiming that the Joint Board's complaint raises issues which affect tribal property interests and treaty rights. The Joint Board appeals from an order denying the Joint Board's motion for preliminary injunction for failure to exhaust administrative remedies and dismissing the complaint without prejudice pending the outcome of administrative proceedings.

We agree with the district court that the Joint Board failed to exhaust its administrative remedies and affirm.

## FACTS AND PROCEDURAL HISTORY

This case concerns a continuing dispute over water supplies controlled by the FIPP and the operating strategies of the BIA to serve the competing demands of tribal fisheries and irrigated agriculture. In 1985 the Tribes initiated litigation which resulted in dismissal when all the parties stipulated to minimum water flows and reservoir levels for the 1985 Irrigation season. *Confederated Salish and Kootenai Tribes v. Flathead Irrigation and Power Project, et al.*, 616 F.Supp. 1292 (D.Mont.1985). In 1986 the district court granted a preliminary injunction in an action brought by the Joint Board to enjoin the BIA from implementing an unequal water distribution plan. *Joint Bd. of Control of the Flathead, Mission & Jocko Irrigation District v. United States, et al.*, 646 F.Supp. 410 (D.Mont.1986), *rev'd*, 832 F.2d 1127 (9th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1732, 100 L.Ed.2d 196 (1988). As discussed below, we reversed this order.

*Joint Bd.*, 832 F.2d 1127. The Joint Board filed the present action in district court during the 1987 irrigation season while an appeal was pending in this court in the 1986 litigation.

## I. *Litigation Concerning the 1985 Irrigation Season*

This water litigation began in 1985 when the Tribes sued the United States and the BIA, which administers the FIPP. *Confederated Salish and Kootenai Tribes,* 616 F.Supp. at 1294. The Joint Board and the State of Montana intervened, claiming interests in the distribution of the Reservation waters. *Id.*

The Joint Board consists of representatives of the three irrigation districts served by the FIPP, and represents approximately 1700–1750 irrigation division operation and maintenance accounts. The BIA, an agency within the United States Department of the Interior, administers the FIPP. The FIPP supplies water to irrigate over 127,-000 acres of land, some of which are held in trust by the United States for the Tribes and their members. *Id.* The FIPP maintains over one thousand miles of canals and approximately fourteen reservoirs for irrigation, which account for 55 to 65 percent of all surface waters occurring within the Reservation. *Id.*

The Tribes sought to enjoin the BIA from dewatering streams and reservoirs on the Reservation in order to meet the Joint Board's irrigation demands. *Id.* The Tribes alleged the streams and reservoirs serve as a natural habitat for tribal fisheries consisting largely of native and wild naturally reproducing trout. Accordingly, dewatering could cause irreparable injury to the fisheries. *Id.* In 1985, the Flathead Reservation experienced unusually dry conditions which threatened a severe drought before the close of the irrigation season as a result of diminished precipitation and snowpack levels. *Id.* The Tribes claimed the FIPP threatened the existence and preservation of tribal fisheries, in violation of the Treaty of Hell Gate, signed on July 16, 1855, and approved by Congress in 1859. 12 Stat. 975.

At the hearing on the Tribes' motion for a preliminary injunction, the Tribes and the United States presented the district court with a stipulation, expiring October 31, 1985, setting forth procedures to establish instream flows and providing designated minimum instream flows for particular streams and minimum levels for particular reservoirs. All of the parties, including the intervenors, joined in the stipulation. The BIA agreed to implement emergency instream flow levels for the 1985 irrigation season and to initiate a more comprehensive planning effort for the 1986 irrigation season. *Id.* The district court accepted the stipulation by all parties and dismissed the action without prejudice as moot. *Id.*

## II. *Litigation Concerning the 1986 Irrigation Season*

On August 4, 1986, the Joint Board filed an action in the district court for injunctive relief, claiming that the BIA had abused its discretion in developing a 1986 water allocation plan by failing to consider the rights and interests of the Joint Board. *Joint Bd.*, 646 F.Supp. at 413. The Joint Board named the United States and pertinent agencies as defendants. *Id.* The district court granted the Tribes' motion to intervene and issued a temporary restraining order enjoining implementation of the 1986 water allocation plan. *Id.*

On October 16, 1986, the district court granted a preliminary injunction prohibiting the BIA from implementing the 1986 plan, or any plan which failed to consider the rights of any interested party. *Id.* at 426. The trial judge directed the BIA to allocate all of the waters of the reservation in accordance with the principle of "just and equal distribution" using the 1985 and 1986 district court opinions as parameters to reach a fair middle ground in allocating the water resources until such time as the State of Montana adjudicates the priority of the competing rights of the parties. *Id.*

The Tribes appealed the district court's decision in the 1986 irrigation season litigation and on November 17, 1987, we reversed the district court's order and vacated the preliminary injunction. *Joint Bd.,*

832 F.2d 1127. In explaining our decision, we stated:

> The action of the BIA in establishing stream flow and pool levels necessary to protect tribal fisheries is not unreviewable. In making its determination, however, the BIA is acting as trustee for the Tribes. Because any aboriginal fishing rights secured by treaty are superior to all irrigation rights, neither the BIA nor the Tribes are subject to a duty of fair and equal distribution of reserved fishery waters. Only after the fishery waters are protected does the BIA, acting as Officer-in-Charge of the irrigation project, have a duty to distribute fairly and equitably the *remaining* waters among irrigators of equal priority.

*Id.* at 1132 (emphasis in original).

We also determined that the issues presented by the parties were not rendered moot even though the most recent interim agreement covering the 1986 irrigation season had expired. *Id.* at 1129–30. We stated that the "[o]perating strategy for each irrigation season had such a short life that it cannot effectively be subjected to appellate review." *Id.* at 1130. We also concluded that the challenged operating strategies would continue to recur. *Id.* In explaining our determination that a live controversy existed, we stated that "there is a continuing public interest in determining the appropriate legal principles by which the BIA should distribute water, which transcends the particular distribution strategy selected in any given year." *Id.*

### III. *Litigation Concerning the 1987 Irrigation Season*

On June 8, 1987, the Joint Board filed a complaint for injunctive relief and judicial review and a motion for a preliminary injunction to enjoin the continued operation and implementation of the 1987 Operating Procedures for Irrigation and Fisheries ("1987 Operating Procedures") issued by the BIA on April 3, 1987. The complaint named as defendants the United States of America, the United States Department of Interior, Donald Hodel as Secretary of the Interior, the BIA, Stanley Speaks as Director of the Portland Area Office of the BIA, the FIPP, and Wyman Babby as Superintendent of the Flathead Agency. The district court granted the Tribes' motion to intervene on June 19, 1987.

The BIA initiated a planning process in the spring of 1987 "for the purpose of disseminating information to the interested parties and to solicit verbal and/or written input from those parties" in order to develop and implement the 1987 Interim Water Management Planning for the Bureau of Indian Affairs, Flathead Agency Irrigation and Fishery Programs ("1987 Interim Water Management Plan"). The Joint Board asserts that the BIA abused its discretion in determining the flow levels to be implemented, flouted the district court's prior order requiring due consideration of the interests of all affected parties, and undertook a de facto adjudication of water rights on the Reservation by implementing the 1987 Operating Procedures.

The parties presented evidence to the District Court on June 24, 1987 on the Joint Board's motion for preliminary injunction. The District Court entered its Memorandum and Order on July 21, 1987, denying the Joint Board's motion for preliminary injunction for failure to exhaust administrative remedies, and dismissing the complaint without prejudice pending the outcome of the administrative proceedings. The District Court also denied the motion of the State of Montana to intervene as a party defendant as moot. On August 12, 1987, the Joint Board filed a timely notice of appeal pursuant to Fed.R. of App.P. § 4(a)(1).

## DISCUSSION

### I. JURISDICTION

The district court had jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (1982) and 5 U.S.C. § 702 (West Supp.1986). This court has jurisdiction to review the preliminary injunction under 28 U.S.C. § 1292(a)(1) (1982).

## II.  STANDARD OF REVIEW

A district court's order regarding preliminary injunctive relief is subject to limited review.  *Lou v. Belzberg*, 834 F.2d 730 (9th Cir.1987), *cert. denied*, — U.S. ——, 108 S.Ct. 1302, 99 L.Ed.2d 512 (1988). "The grant or denial of a preliminary injunction will be reversed only where the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact." *Lou*, 834 F.2d at 733 (citing *Colo. River Indian Tribes v. Town of Parker*, 776 F.2d 846, 849 (9th Cir.1985)).

## III.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

The district court did not abuse its discretion, err as to the law, or make clearly erroneous finding of facts in denying the Joint Board's motion for Preliminary Injunction and dismissing the complaint for failure to exhaust administrative remedies.

The exhaustion rule allows an administrative agency to develop a complete factual record, to apply its expertise and discretion, and possibly to resolve the conflict without judicial intervention.  B. Mezines, J. Stein and J. Gruff, 5 *Administrative law* § 49.01, pg. 49–3 (1988).  Exhaustion insures that a court will have the benefit of the agency's experience in exercising administrative discretion, as well as a factual record to review.  *Id.*  Courts pragmatically interpret administrative finality, considering "whether the process of administrative decisionmaking has reached a stage where judicial review will not disrupt the orderly process of adjudication and whether rights or obligations have been determined." *Port of Boston Marine Terminal Assoc. v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71, 91 S.Ct. 203, 209, 27 L.Ed.2d 203 (1970).

When a statute or agency rule demands exhaustion of administrative remedies, "the federal courts may not assert jurisdiction to review agency action until the administrative appeals are complete." *White Mountain Apache Tribe v. Hodel*, 840 F.2d 675, 677 (9th Cir.1988).

In *White Mountain Apache Tribe* the district court dismissed without prejudice an action filed by the tribe because it failed to exhaust its administrative remedies within the Department of Interior. *Id.* The Tribe claimed that the Secretary of Interior, as trustee for its natural resources, fraudulently mismanaged the Tribe's grazing land and timber in order to divert Salt River water from the reservation to non-Indian water users. *Id.* We affirmed and held that the Tribe could not litigate its claim of fraudulent conduct in the district court without a "factual administrative record to review, not merely an administrative decision to contradict." *Id.* at 677 (*citing 5 Administrative Law* § 49.01, pg. 49–3 (1987)). Final BIA actions may be reviewed in the district court under 5 U.S.C. § 704. BIA regulations provide procedures for the exhaustion of administrative remedies so that a final decision may be presented for judicial review under 5 U.S.C. § 704:

> In order to insure the exhaustion of administrative remedies before resort to court action, no decision which at the time of its rendition is subject to appeal to a superior authority in the Department shall be considered final so as to be agency action subject to judicial review under 5 U.S.C. § 704, unless when an appeal is filed, the officer to whom the appeal is made shall rule that the decision appealed from shall be made immediately effective.  25 C.F.R. § 2.3(b).

Exhaustion of administrative remedies within the BIA requires the appeal of a decision to the BIA Area Director, then to the Commissioner of Indian Affairs ("Commissioner"). 25 C.F.R. § 2.3(a). The regulations provide that the Commissioner shall render a decision within 30 days, or refer the appeal to the Board of Indian Appeals ("Board") for a decision.  25 C.F.R. § 2.19(a). If the Commissioner does not take action within the 30 day time limit, the Board shall review and render the final decision.  25 C.F.R. § 2.19(b). If the Commissioner does render a decision within the 30 day time limit, the parties may appeal that decision to the Board.  43 C.F.R.

§ 4.332. The Board may make a final decision, or may require a hearing to resolve genuine issues of material fact, conducted by an administrative law judge of the Office of Hearings and Appeals. 43 C.F.R. § 4.337. The Board shall then issue a decision setting forth findings of fact and conclusions of law, which is the final administrative action by the Department. 43 C.F.R. § 4.340

■ In exceptional circumstances "exhaustion may not be required." *White Mountain Apache Tribe,* 840 F.2d at 677. Objective and undisputed evidence of administrative bias would render pursuit of an administrative remedy futile. *Id.* at 677–78; *See also 5 Administrative Law* at § 49.02[4]. However, the futility exception to the exhaustion requirement should not be applied where the agency has not had an opportunity to develop a record: "[T]he purposes underlying the exhaustion doctrine include the opportunity for the *agency* to exercise its discretion and expertise and the opportunity to make a record for the district court to review." *In re Steele,* 799 F.2d 461, 466 (9th Cir.1986) (emphasis in original). Administrative review is not futile if the plaintiff's allegations of bias are purely speculative. *United States v. Litton Industries, Inc.,* 462 F.2d 14, 18 (9th Cir.1972).

■ The Joint Board did not avail itself of the remedies provided by the BIA regulations to challenge the 1987 Operating Procedures. In fact, this action was filed in the middle of a comment period established by the BIA for public participation in the water allocation plan for the 1987 irrigation season. The BIA's Environmental Assessment specified that the comment period would remain open until June 30, 1987, and that the BIA would consider any proposed changes in the Operating Procedures submitted by that date. The BIA also indicated that it intended to monitor stream flows and their effects on various water uses throughout the season, making modifications as needed.

Even though the Joint Board retained a professional consulting firm to conduct instream flow analyses on parts of the FIPP system, the Joint Board presented only some of the results of the studies to the BIA during the comment period. The Joint Board presented a great deal of additional evidence to the district court concerning the expected water supply for the summer of 1987 and the potential adverse effects upon irrigation.

The Joint Board maintains that it would have been futile to present this evidence in support of its irrigation needs to the BIA because that agency would have ignored it. The Joint Board asserts that the BIA relegated the water rights of the irrigators to a "junior" status in relation to the Tribes' "senior" or "aboriginal" water rights, and the BIA would have protected the minimum instream flows promulgated for 1987 without regard to the competing needs or interests of the irrigators.

The Joint Board failed to present any evidence to the district court that demonstrated actual bias by the BIA which would render a pursuit of administrative remedies futile. Instead, the Joint Board merely speculates that the BIA would not fairly assess its water flow requirements and data. In the absence of evidence of actual bias, the Joint Board cannot prevail on its claim that exhaustion of administrative remedies would be futile. *White Mountain Apache Tribe,* at 678.

■ While the Joint Board has no right to participate in the *initial* quantification of the Tribes' fishing water rights by the BIA, the Joint Board does have a right to seek administrative review to challenge the amount of water allocated to the Tribes and to challenge an adverse decision by filing an action in the district court. In our prior decision concerning the 1986 irrigation season, we explained the Joint Board's right as follows:

[certain provisions of the Code of Federal Regulations] impose duties upon the BIA in managing the Project's *irrigation* water in fairness to all irrigators; they do not deal at all with the BIA's duty in helping the Tribes to protect their prior and paramount fishing water rights. While the Joint Board and junior appropriators are free to contest by legal

means the Tribes' and the BIA's quantification of the Tribes' fishing water rights, the Joint Board has produced, and we find, no authority that guarantees it a right to participate in the process by which the BIA and the Tribes initially establish that quantification.

*Joint Bd.,* 832 F.2d at 1132 (emphasis in original).

### CONCLUSION

Because the Joint Board failed to exhaust its administrative remedies before seeking judicial review of the BIA's initial quantification of the Tribes fishing water rights, or the BIA's distribution of the remaining water among irrigators, the dismissal of the complaint without prejudice is AFFIRMED.